**In re Robert Phillip PEARSON
and Fannie Lancaster
Pearson, Debtors.**

**Bankruptcy No. 92–18926.**

United States Bankruptcy Court,
D. Massachusetts.

June 4, 1993.

Harvey S. Shapiro, Joseph M. Szabo.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The Court has before it the Interim Application and Itemized Disclosure of Harvey S. Shapiro Respecting the Allowance or Payment of Compensation and Reimbursement of Expenses to Counsel to Debtors. This case presents the following issue: What is reasonable compensation for a debtor's attorney in a Chapter 13 case? As in many jurisdictions, there are "customs" that govern the amount and method of payment of fees for debtors' counsel in the Eastern Division of the District of Massachusetts. *See generally* II Keith M. Lundin, *Chapter 13 Bankruptcy*, § 7.28 at 7–57 (1991). It was the practice of the late Chief Judge James N. Gabriel to allow fees in the approximate amount of $750. More recently, fees have been allowed, without the necessity of formal application, at a higher level, ranging from $750 to $1,500. This case provides the opportunity to transform the unwritten rules to written ones for the benefit of all Chapter 13 practitioners, particularly those who, with the increase in the number of Chapter 13 cases, are new to this area of practice.

### II. THE PEARSON CASE

Robert and Fannie Pearson (the "Pearsons") filed a Chapter 13 petition on August 31, 1992. On September 16, 1992, they filed their Schedules and Statement of Affairs, as well as a Statement of Attorney Compensation. Approximately one week later they filed their Chapter 13 plan, having obtained Court approval for an extension of time within which to file it.

The Statement of Attorney Compensation signed by the Pearsons' attorney, Harvey S. Shapiro ("Attorney Shapiro"), contained the following information: "Filing fee and attorneys fees are to be paid by the Boston Teachers' Union Pre–Paid Legal Services Plan at the rate of $70.00/hour." At the commencement of the case, Attorney Shapiro had received no retainer.

The Debtors, through their Chapter 13 plan, proposed to submit future earnings of $2,270.32 per month for sixty months to satisfy their creditors, as well as net proceeds ("court award or settlement exclusive of attorneys fees, disbursements and subrogation rights of medical and other insurance carriers, if any") from the resolution of a personal injury suit pending in the Maine Superior Court, York County, up to a maximum of $20,592.97.

With respect to their personal residence located at 11 Pheasantwood Lane, Sharon, Massachusetts, which the Debtors valued at $170,450, the Debtors proposed to pay the secured claim of the Town of Sharon in the amount of $4,326.98 in full. The Debtors proposed to treat the $154,000 claim of Equitable Mortgage Associates ("Equitable"), a second mortgagee, as secured in the amount of $111,822.61 and unsecured in the amount of $42,177.39. Additionally, they proposed to make a lump sum payment of $11,822.61 to Equitable upon confirmation of their plan and to pay the $154,000 arrearage on that mortgage with monthly payments of $1,933.29. The Debtors proposed to pay the first mortgagee, Brookline Savings Bank ("Brookline"), $54,300.41 in monthly installments of $944.84 outside their plan. The third mortgage held by Martin Hodas in the amount of $24,000, which was set forth on Schedule A, was not specifically mentioned in their plan.

The Debtors divided their unsecured creditors into two classes: creditors with nondischargeable debts arising from student loans and regular unsecured creditors. The latter class was to receive the net proceeds of the Maine litigation.

On October 14, 1992, Equitable filed a motion for relief from stay, alleging that the Debtors lacked equity in their residence. The motion was heard on November 13, 1992, and the Debtors were instructed to commence an adversary proceeding with respect to the bifurcation of the mortgage claim.

In the meantime, Massachusetts Credit Union Share Insurance Corporation on behalf of the Massachusetts Teachers Association Credit Union (the "Credit Union") and

Martin Hodas ("Hodas") filed objections to the Debtors' plan. Although the creditors hold somewhat different claims, an attachment which the Debtors seek to avoid as impairing their exemption in the case of the Credit Union and a fully or partially unsecured mortgage, depending upon the value of the property, in the case of Hodas, both creditors objected to the liquidation value used by the Debtors in their plan. The Court sustained the objections, pending the outcome of the adversary proceeding which the Debtors commenced on November 17, 1992 by the filing of a "Complaint to Determine the Extent and Nature of Security Interest in Residential Premises, and for Damages on Account of Overcharges" in which the Credit Union, Hodas, Equitable, and Brookline are named defendants.

At this time, the Debtors have not succeeded in obtaining confirmation of their Chapter 13 plan, nor have they proposed an amended plan. They have obtained Court authority to employ an appraiser and to employ special counsel to continue the personal injury litigation in Maine. A pre-trial conference in the adversary proceeding commenced on November 17, 1993 was held on June 2, 1993. The Debtors' attorney reported a settlement with two of the defendants and the likelihood of settlement with the other defendant that responded to the complaint. The Court scheduled a trial for August 25, 1993.

Prior to the pre-trial hearing, Attorney Shapiro filed six supplements to his Statement of Attorney Compensation as follows:

| 1/11/93 | $7,038.80 (inclusive of $120 fee) | 09/28/92–12/31/92 |
| 2/17/93 | $1,565.20 | 01/06/93–02/11/93 |
| 2/19/93 | Agreement by Debtors to pay unreimbursed expenses | |
| 4/06/93 | $756.20 | 02/19/93–04/05/93 |
| 5/06/93 | $997.50 | 04/05/93–05/05/93 |
| 5/24/93 | Agreement by Debtors to be obligated for attorney fees and costs at the rate of $70.00/hour | |

In view of the supplements, it is evident that Attorney Shapiro's total fees shall exceed $11,000 in this case. The supplements also reveal Attorney Shapiro has been paid $10,357.70 by the Boston Teachers' Union Pre–Paid Legal Services Plan.

Upon receipt of the Supplemental Statement of Attorney Compensation dated January 11, 1993, this Court ordered Attorney Shapiro to file a fee application in conformance with 11 U.S.C. §§ 329, 330, Federal Rule of Bankruptcy Procedure 2016 and Local Rule 34. Attorney Shapiro complied with the order and filed an Interim Application and Itemized Disclosure of Harvey S. Shapiro Respecting the Allowance or Payment of Compensation and Reimbursement of Expenses to Counsel to Debtors (the "Application"). Attorney Shapiro seeks

$10,309.94 for 144 hours of work at the rate of $70.00/hour in his Application, which covered the period from August 24, 1992 through January 31, 1993, as well as $229.94 for expenses. His Application contains a statement that $9,744.70 was "received or pending in full satisfaction." However, the Court is unable to reconcile this number ($9,744.70) with those appearing on the Supplements as of February 19, 1993, the time of the filing of the Application which total $8,604.

## III. THE CODE AND THE RULES

Section 329 of the Bankruptcy Code provides the following:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such

attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

 (1) the estate, if the property transferred—

  (A) would have been property of the estate; or

  (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

 (2) the entity that made such payment.

11 U.S.C. § 329. With respect to the amount of compensation awarded, section 330 of the Bankruptcy Code provides in pertinent part:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to ... the debtor's attorney—

 (1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... and by any paraprofessional persons employed by such ... attorney, ... based on the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

 (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330.

Federal Rule of Bankruptcy Procedure 2016(b) implements section 329 by requiring every attorney for the debtor to file and transmit to the United States trustee the statement required by section 329 within 15 days of the order for relief. Federal Rules of Bankruptcy Procedure 2016(a) and 2017 govern the filing of fee applications and oversight of payments to attorneys, respectively. Moreover, Federal Rule of Bankruptcy Procedure 1006(b)(3) requires the payment in full of the filing fee before the debtor or Chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.

## IV. CASE LAW

■ The role of the Boston Teachers' Union Pre–Paid Legal Services Plan as the source of the funds to pay the Debtors' legal fees does not relieve the Court of its duty to examine the reasonableness of compensation. *See In re Bush,* 131 B.R. 364, 365 (Bankr.W.D.Mich.1991). As the *Bush* court recognized in circumstances that admittedly are different than the instant case:

This obligation is especially important in a Chapter 13 case where a debtor has neither inclination nor motivation to object to attorney's fees. Once disposable income has been determined, it generally makes no difference to the debtor whether that money goes to his or her attorney as fees or to the debtor's prepetition creditors, since, in any event, the money is not available to the debtor.

*Id.* at 365.

■ Although there are a plethora of cases regarding what amount of compensation is reasonable in the context of Chapter 13, *see In re Bush, supra,* ($600); *In re Smith,* 111 B.R. 81 (Bankr.E.D.PA.1990) ($1,000); *In re Taylor,* 100 B.R. 42 (Bankr. D.Colo.1989) ($970); *In re Ashton,* 92 B.R. 254 (Bankr.S.D.Ohio 1988) ($650); *In re Richardson,* 89 B.R. 716 (Bankr.N.D.Ill. 1988) ($750), a case from this circuit has set the parameters for this Court's analysis. *See In re Rodriguez,* 76 B.R. 252 (Bankr. D.P.R.1987). In that case, the bankruptcy court recognized that the First Circuit's adoption of the "lodestar" analysis common to attorney compensation determinations in other chapters is applicable to the review of the reasonableness of attorney compensation in Chapter 13 cases, *Boston and Maine Corp. v. Moore,* 776 F.2d 2, 6 (1st Cir.1985). That test provides for the ad-

justment of the lodestar fee up or down upon consideration of twelve factors, including the novelty · and difficulty of the issues raised, the skill required to perform the legal services, the amount in controversy and the results obtained, and customary fees for like work. *See Harman v. Levin,* 772 F.2d 1150, 1152 n. 1 (4th Cir.1985); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The bankruptcy court also noted that the Court of Appeals for the First Circuit has permitted non-hourly fee arrangements. *Rodriguez, supra,* at 253; *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green,* 778 F.2d 890, 894 (1st Cir.1985). In *Rodriguez,* the court stated:

> The practice in this district is to charge a fixed rate for the filing of a Chapter 13 petition. The Court finds that the rates ranging from $450.00 to $600.00 are reasonable provided the quality of service and results obtained are as expected by both the debtor and the Court and that the fee does not exceed twenty-five percent (25%) of the payments to be made under the plan.

76 B.R. at 254. The court explained that the 25% figure was based upon the Social Security Act, 42 U.S.C. § 406(b)(1), 20 C.F.R. § 404.1730 and a Puerto Rican law regulating attorneys' fees of a contingent nature in actions to recover damages. It added that when fees exceeded $600 or 25% of the payments under a Chapter 13 plan, it would apply the lodestar analysis to determine the reasonableness of the fee.

## V. GENERAL CONCLUSIONS

■ This Court agrees with the approach taken by the bankruptcy court for the district of Puerto Rico. The Court also agrees that the time and labor required in an uncomplicated Chapter 13 case, particularly in light of the very recent United States Supreme Court decision in *Nobelman v. American Savings Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), that resolves the contentious mortgage bifurcation issue, is or should be approximately 10 hours for the preparation of schedules, the statement of affairs, and the Chapter 13 plan, and attendance at the

section 341 meeting and confirmation hearing. Moreover, as the circuit court in *Harman v. Levin, supra,* noted, "Chapter 13 bankruptcy cases often involve a number of relatively routine questions with which regular practitioners quickly become familiar, so they represent the type of cases where a court may well utilize factors in addition to the time reasonably expended and a reasonable hourly rate." *Id.* at 1153. Accordingly, this Court shall permit fees in the range of $750–$1,000 without the need for filing a detailed fee application, although the Court obviously shall review all fees in view of the mandate of section 330 of the Bankruptcy Code, particularly if the Statement of Attorney Compensation and the Chapter 13 plan reveal that the fee may be excessive in light of the distribution to creditors.

■ With respect to the payment of fees in uncomplicated cases where no formal fee application is required, the Court shall permit debtor's counsel, if he or she receives a retainer, to apply one-half of the fee at the commencement of the case and the balance from a client fund account at confirmation, unless payment of all or part of the fees is to be made by the Chapter 13 trustee during the course of the debtor's plan.

■ In those circumstances where no plan is confirmed within 120 days of the commencement of the Chapter 13 case, this Court, in its discretion, shall issue an order to show cause why fees should not be disgorged as excessive. *See In re Rodriguez, supra,* at 253–54; Fed.R.Bankr.P. 2017.

■ In circumstances, such as the instant case, where fees exceed $1,000, the Court shall require the filing of a fee application that strictly conforms with the requirements of section 330, Fed.R.Bankr.P. 2016(a) and Local Rule 34.

## V. ATTORNEY SHAPIRO'S APPLICATION

■ Attorney Shapiro divided his time according to five categories of work: 1) case administration; 2) document review;

3) motion for relief from stay, objections to plan, motions for employment of counsel (tort litigation), real estate appraiser, and broker (adversary proceeding); 4) research; and 5) litigation of adversary proceeding against Equitable Mortgage Associates, Brookline Savings Bank, Martin Hodas and MISC. Attorney Shapiro did not tabulate the number of hours spent on each category of work, but the Court's review of the Application reveals that he spent at least 45.92 hours on document review, at least 25.41 hours on research, 19.62 hours in conferences with his clients or other attorneys; and 38.39 hours preparing documents. The number of hours spent on this case appear at first blush to be excessive. However, in view of Attorney Shapiro's modest $70 hourly rate, the Court is not inclined to reduce Attorney Shapiro's fees for this reason, particularly as a review of the adversary proceeding indicates an exemplary degree of preparation and thoroughness on Attorney Shapiro's part.

Nevertheless, given the present status of the case—a pending adversary proceeding the results of which will require the filing of an amended plan regardless of its outcome—this Court shall authorize an award of interim compensation only at this time. Accordingly, the Court hereby allows Attorney Shapiro $7,500 in fees and $229.94 in expenses as an interim award. Attorney Shapiro shall file either a second interim application or a final fee application prior to the confirmation hearing. At that time, the Court will be in a position to fairly assess the reasonableness of Attorney Shapiro's fees and the benefit of his services to the estate. *See* 11 U.S.C. §§ 330(a), 503(b)(2), 507(a)(1).

An appropriate order shall issue.