**In re Richard L. BANKS, d.b.a. Banks & Associates, Debtor.**

Bankruptcy No. 93–14593.

United States Bankruptcy Court,
E.D. Tennessee.

July 29, 1994.

Kyle Weems, Chattanooga, TN, for debtor.

Stuart E. Duncan, Chattanooga, TN, for Meigs County Bank.

Jeffrey S. Norwood, Chattanooga, TN, for American Nat. Bank & Trust.

Gregory Weddle, Asst. U.S. Atty., Knoxville, TN, for I.R.S.

Kimberly C. Swafford, Atty. Advisor for the U.S. Trustee, Chattanooga, TN.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This Chapter 11 case is before the court for a determination of whether certain unpaid attorney fees previously awarded to the debtor-in-possession for his legal representation of Chapter 13 debtors are the property of his bankruptcy estate or whether they are excepted from that category by 11 U.S.C. § 541(a)(6) as "earnings from services performed by an individual debtor after the commencement of the case." Having considered the evidence presented at the hearing of this matter, the arguments of counsel, and the briefs of the parties, the court is of the opinion that the unpaid attorney fees in question were fully earned when they were awarded, that they do not fall within the "earnings exception" described in § 541(a)(6), and that therefore they are property of the bankruptcy estate in this case.

I.

On December 10, 1993, Richard L. Banks, doing business as Banks & Associates, filed a petition for relief under Chapter 11 of the Bankruptcy Code. Mr. Banks is an attorney who specializes in representing debtors in consumer bankruptcy cases and who was, at the time of his filing, the attorney of record in approximately 2,400 Chapter 13 cases pending in the Eastern District of Tennessee.

The nearly universal practice for awarding attorney fees to the debtor's counsel in Chapter 13 cases, and the practice in this district, entails the setting of an appropriate fee by the court at an early juncture in the case,

often at confirmation of the debtor's plan. Once the fee is set, the Chapter 13 trustee begins making monthly payments to the debtor's attorney from moneys paid into the plan by the debtor or his employer. Because Chapter 13 plans often last 50 or 60 months, an attorney's fee of $700, for example, might be paid by an initial distribution of $200 to the attorney shortly after confirmation of the plan, followed by monthly payments of $15 for several years until the balance of the fee is paid.

The undisputed evidence in this case shows that Mr. Banks had been awarded a total of over $1,500,000 in attorney fees for the Chapter 13 cases that were pending on the date of his voluntary petition. As of that date, Mr. Banks had received only about eighty percent of those fees, and over $270,000 remained awarded but unpaid. This unpaid balance of the awarded attorney fees is the subject of this litigation. Two creditors, the United States Internal Revenue Service and the American National Bank & Trust Company of Chattanooga, contend that those unpaid fees were earned as of the date of the petition in this case, that they are ordinary accounts receivable, and that therefore they are property of the bankruptcy estate under the general provisions of 11 U.S.C. § 541. Mr. Banks, on the other hand, takes the position that the unpaid fees were unearned as of the date of his petition and that they are not property of his estate because they are specifically excepted from it by the "earnings exception" of 11 U.S.C. § 541(a)(6).

## II.

The Bankruptcy Code defines property of the estate to include, among other things,

> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. § 541(a)(6). Ordinarily, it is easy to determine whether earnings by a debtor are for services he has performed before or after the commencement of his case because compensation is usually considered to be earned as the work it is exchanged for is being done. If the work is done before commencement of the debtor's case, the earnings are accounts receivable and are property of the estate. If the work is done after commencement of the case, the earnings are excepted from the estate by the operation of § 541(a)(6).

■ This case is unusual, however, because there is a dispute over whether the earnings in question are for services Mr. Banks rendered to his Chapter 13 clients before or after the commencement of his case. The dispute arises in part from testimony in the case that as much as seventy percent of the work in a typical Chapter 13 case is done after confirmation, much of it by paralegals and secretaries. Mr. Eron Epstein, a local attorney testifying as an expert in Chapter 13 practice, stated that about sixty percent of the work in the average Chapter 13 is postconfirmation work and that approximately seventy-five percent of that postconfirmation work was routinely done by nonlawyers.[1] Mr. Banks went even further and testified that seventy percent of the work in a Chapter 13 was postconfirmation work. Thus, because a substantial portion of the work done in Chapter 13 cases is done after confirmation, Mr. Banks argues that the attorney fee awarded him at the confirmation of a given debtor's plan must be regarded as compensation both for the work he has done prior to confirmation and for the sixty or seventy percent of the work remaining after confirmation.

An award of attorney fees to the attorney for the debtor in any bankruptcy case is governed by 11 U.S.C. § 330(a)(1), which provides that

> confirmation services rendered by Chapter 13 attorneys may include objecting to creditor claims, modifying plans, defending against motions to dismiss or motions to vacate the automatic stay, amending schedules, and converting the Chapter 13 case to a case under another chapter.

---

1. According to Mr. Epstein, his office's postconfirmation services often entail solving the debtor's transportation problems so the debtor can continue his employment, assisting the debtor in acquiring new but essential debt, and solving problems caused by interruptions in the debtor's employment and income stream. Common post-

the court may award ... to the debtor's attorney reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title....

Because this section allows an award of attorney fees only for "actual" services rendered, bankruptcy courts appear to be limited to paying attorney fees for services that have already been performed and that can be documented according to the method established by Fed.R.Bankr.P. 2016. Rule 2016 requires the submission of "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." *Id.* Notably, there is no provision in either § 330 or Rule 2016 for estimating and awarding attorney fees for services to be rendered in the future, and the use of the past tense in both the code section and the rule—"services rendered"—conveys the idea that compensation may be paid only for work already performed. Thus, Mr. Banks' argument that fees paid in Chapter 13 cases after confirmation are really for services rendered after confirmation finds no support in either the Bankruptcy Code or Rules, according to which a bankruptcy court could not properly award a fee for unspecified, speculative services that might never be rendered in the particular case it had under consideration.

The case law in this circuit is to the same effect. In *Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334 (6th Cir.1991), the Sixth Circuit held that a bankruptcy court applied an improper legal standard in setting the fee for the debtor's attorney in a Chapter 13 case when it apparently adhered to a fixed fee for what it considered to be "normal and customary" services and refused to consider the attorney's lodestar

application,[2] which substantiated a higher fee than the one awarded. Emphasizing the plain language of § 330, the Sixth Circuit observed that

> [w]hile the bankruptcy courts certainly know the typical compensation paid for legal services in a Chapter 13 case better than this court, the establishment of a fixed fee for certain "normal and customary" services is directly contrary to the plain "actual, necessary services rendered" language of 11 U.S.C. § 330.

*Id.* at 337. It then adopted the lodestar method as the primary method for setting attorney fees in Chapter 13 cases.

It seems obvious that attorney fees calculated by the lodestar method can take account only of the hours an attorney has already expended in the case, for those are the only ones he can document as "actual" and "rendered." Thus, there are no provisions in the lodestar method, § 330, or Rule 2016 for payment of attorney fees for services that might or might not be rendered in the future.

Moreover, there are no provisions that allow the court to determine what an average fee would be and to pay it in all cases with the hope that a case in which counsel is undercompensated today will be subsidized by one in which he is overcompensated tomorrow. An average fee applied in all cases is certainly a fixed fee as to an individual case, and *Boddy*, the controlling precedent in this circuit, condemns the use of fixed fees. Yet, Mr. Bank's would have the court characterize the fee awarded in each of his Chapter 13 cases as an average fee, arguing, as he does, that the initial fee awarded at confirmation is intended to compensate him for services he renders his client until the case is closed and that, in the average case,[3] he earns whatever part of the initial fee happens to be paid him[4] after confirmation by render-

2. The lodestar method of computing attorney fees involves multiplying the attorney's reasonable hourly rate by the number of hours the attorney has reasonably expended on the case. *Boddy*, 950 F.2d at 337.

3. Mr. Banks has offered opinion evidence that sixty or seventy percent of the work performed in the average Chapter 13 is performed after confirmation. He has offered no evidence of the num-

ber of hours of work an attorney performs after confirmation, even in the average case, nor has he offered evidence of the average number of hours he personally spends on postconfirmation work.

4. The amount paid him after confirmation is a matter of happenstance. If his client is able to pay in a fund of money prior to confirmation, Mr. Banks will be permitted to retain a substan-

ing services after confirmation. Because he renders significant postconfirmation services in some cases, little service in others, and no service in still others, yet is paid after confirmation in all of them, his insistence that he is "earning" fees in all these cases must mean that the court has averaged the cases together and is paying for all the postconfirmation work on that basis. That is the only way Mr. Banks could conceivably "earn" fees in those cases in which he does little or no postconfirmation work. This argument, however, collides with *Boddy's* disapproval of awarding an average fee in a given case because, by logical extension, *Boddy's* rationale would preclude fees arrived at by averaging all the work done in a single attorney's numerous cases, which is what Mr. Banks argues for, as well as fees arrived at by averaging all the work done in a particular kind of case by the local bar, which is the usual method by which "fixed," "flat," "typical," or "customary" fees are arrived at.

Like many, if not most, courts, this court has established an expedited regime for awarding attorney fees in Chapter 13 cases to accomplish the goal of setting reasonable fees acceptable to all the parties in interest in the case while avoiding unnecessary timekeeping, filings, and litigation. *See, e.g., In re Orris,* 166 B.R. 935, 937 (Bankr. W.D.Wash.1994) (court approves initial fees in $700—$1000 range depending on the complexity of the case and only if there is no objection); *In re Pearson,* 156 B.R. 713, 717 (Bankr.D.Mass.1993) (court considers fee applications in $750—$1000 range without a detailed statement); *In re Atwell,* 148 B.R. 483, 487 (Bankr.W.D.Ky.1993) (court approves fees not exceeding $875 without a detailed statement if there is no objection; counsel may submit a detailed statement at any time); *In re Bush,* 131 B.R. 364, 367 (Bankr.W.D.Mich.1991) (court considers fee applications not exceeding $1000 without de-

tailed statement); Keith M. Lundin, *Chapter 13 Bankruptcy,* § 7.31 at 7–75 (J. Wiley & Sons, 1994) ("It is almost inconceivable that bankruptcy courts would engage in full-scale lodestar calculation of debtors' attorneys' fees in every Chapter 13 case, especially in districts with high-volume Chapter 13 programs."). Thus, this court does not *require* an attorney to file an itemized statement of hours worked if his request for "initial compensation" does not exceed $850 and no interested party objects. Under this system, the court reviews the case file and considers, among other things, the amount of the debt, both secured and unsecured, the length of the plan and the amount of distribution to the creditors, the nature of the case (consumer or business), and its complexity. This review is undertaken, and the initial fee is determined, at confirmation when the court, considering the factors mentioned, can estimate an approximate lodestar fee for the services reasonably performed up to that point.

The system also provides for the award of "additional compensation" to the attorney if he renders services to the debtor after confirmation. Again, if there are no objections, and if the additional compensation requested and the initial compensation already awarded do not exceed $1250, the court can estimate an approximate lodestar fee based upon a description of the services rendered.

■ This court's two-tiered system, providing as it does for "initial compensation" and "additional compensation,"[5] demonstrates the court's purpose to award fees only for those services that have already been rendered. Because the award of fees at confirmation is intended to compensate attorneys only for services already rendered, the fees must be considered fully earned at the time they are awarded. *See In re Orris,* 166

tial portion of it as part of the initial fee set at confirmation. If his client fails to pay in an amount in excess of the filing fee, then all of Mr. Banks' fee will be paid after confirmation.

**5.** Standing Order 93–1, which makes these distinctions and otherwise sets up the system described herein, has been in effect since June 4, 1993. It superseded Standing Order 90–1, which had been in effect since June 1, 1990.

Although Standing Order 90–1 did not specifically make provision for the awarding of "additional compensation" as Standing Order 93–1 does, it did refer to *"initial* compensation," and the regular practice of the court was, and is still, to award additional compensation for services rendered after confirmation upon a properly supported application to do so.

B.R. 935, 937 (Bankr.W.D.Wash.1994) (court considers that fee awards set in confirmation orders compensate counsel for all preconfirmation services, but not post-confirmation services); *In re Atwell,* 148 B.R. 483, 487 (Bankr.W.D.Ky.1993) (court awards fee for services performed between the filing of the Chapter 13 petition and the filing of the statement of allowed claims; counsel may request additional fees for services rendered after the filing of the statement of allowed claims). The same holds true for any fees awarded as additional compensation for post-confirmation services: they are earned at the time of the award.[6]

Mr. Banks has apparently misperceived the nature of the court's fee award, perhaps owing to the fact that attorneys of record in Chapter 13 cases usually continue in that capacity until the case is closed. Since a case might last five years, it could be wrongly assumed that some undefined part of the initial award has been intended sub silentio as compensation for minor postconfirmation services that would not warrant the filing of another request for attorney fees. If this incorrect assumption were true and the initial fee was indeed to be earned over the entire life of the case, counsel would occasionally be obliged to return unearned fees to clients or Chapter 13 trustees when cases failed soon after confirmation. After many thousand Chapter 13 cases, the court is unaware of any instance in which fees have been returned or a motion for disgorgement has been filed under such circumstances.

### III.

In this case the statutory law and the case law converge with the court's intentions in awarding attorney fees. Bankruptcy Code § 330, Rule 2016, and *Boddy* indicate that attorney fees in bankruptcy are awarded only for services already rendered. That has always been this court's understanding, and

it has awarded fees on that basis. On the other hand, Mr. Banks' theory that Chapter 13 fees are averaged fees awarded on a piecework basis simply has no support in law or practice and must be rejected.

For the foregoing reasons, the court finds that the attorney fees awarded Mr. Banks for his representation of Chapter 13 debtors were awarded for services already rendered at the time of the awards. The court concludes (1) that the fees set out in the awards made to Mr. Banks before the filing of his petition in bankruptcy were fully earned before the commencement of his case, (2) that any unpaid portions thereof are not subject to the earnings exception of 11 U.S.C. 541(a)(6), and (3) that any unpaid portions thereof are the property of his estate.

An appropriate order will enter.

---

**6.** Awards arrived at in this manner do not constitute typical, average, fixed, or customary fees because the court has no set fee in mind when it reviews a request for compensation. Indeed, the court often awards a fee less than that requested. Rather, the ceilings employed by the court only mark the bounds within which the court feels comfortable in estimating lodestar fees based on a review of the case. Within these rather narrow

boundaries, a miscalculation by the court would hardly be catastrophic, and the court could as easily make an error in determining the reasonableness of the rates or hours set out in a fully itemized fee application. Setting fees simply is not an exact science, and, in any event, an attorney always has the option of filing an itemized application.